FRANCES A. MASSEY, Appellant, *v.* GLOBE AND RUTGERS FIRE INSURANCE COMPANY, Respondent.

First Department, May 15, 1936.

*Samuel Seabury* of counsel [*Forrest E. Single* and *Loring R. Lecraw* with him on the brief; *Single & Tyler*, attorneys], for the appellant.

*Robert Kelly Prentice* of counsel [*Myron T. Townsend* and *Erving Pruyn* with him on the brief; *Prentice & Townsend*, attorneys], for the respondent.

MARTIN, P. J. The plaintiff's assignor, W. E. Hedger Co., Inc., was the owner of a number of tugs, including one known as the *Barryton*. W. E. Hedger was the sole owner of that corporation and another corporation known as Hedger Transportation, Inc., which chartered barges, and these corporations were engaged in the business of inland marine transportation, transporting cargoes from New York city to various ports on the Great Lakes. These corporations will be considered as one and referred to hereafter as the Hedger Company.

F. S. Royster Guano Company, which will be referred to as Royster Company, was a manufacturer of commercial fertilizer, maintaining a plant in Toledo, Ohio.

A contract was entered into between Royster Company and Hedger Company for the transportation by the latter from New York to Toledo of a cargo of phosphate rock. The freight rate included " complete insurance coverage."

Hedger Company obtained two policies of insurance from Globe and Rutgers Insurance Company, the defendant herein. One of these policies is described as the " towage " policy, which is the basis of this action. The other policy, an open policy, is described as a " cargo " policy (which is not sued on here but is directly involved). Certificates under this latter policy were issued to the Royster Company.

The tug *Barryton* and four barges with a cargo of phosphate rock aboard sailed from Buffalo bound for Toledo. *En route* a storm arose, the tow went adrift, one barge and its cargo were totally destroyed and the cargo on the other three barges was damaged.

Royster Company brought an action against Globe and Rutgers Insurance Company (to which action Hedger Company was not a party) on the certificates issued to it under the " cargo " policy. Recovery was had in the trial court, but this court reversed the judgment and dismissed the complaint (*Royster Guano Co.* v. *Globe & Rutgers Fire Ins. Co.*, 226 App. Div. 178), which disposition

was affirmed by the Court of Appeals (252 N. Y. 75), it being held that there had been a failure to comply with the provisions of the rider attached to the policy to the effect that " trips on Great Lakes to be approved by Surveyor Weisbeck," and that this was a condition precedent to the liability on the part of the insurance company.

While this suit against the insurance company was pending in the State court, the Royster Company filed two libels in admiralty in the United States District Court, one *in rem* against the tug *Barryton*, alleging that the loss and damage to the cargo was due to numerous faults and acts of negligence on the part of the *Barryton* and those in charge of her; the other libel was *in personam* against the Hedger Company, repeating the allegations of negligence as contained in the libel against the *Barryton*, and in addition alleging breach of contract between the Royster Company and the Hedger Company.

After the final disposition of the action against the insurance company by the decision of the Court of Appeals (252 N. Y. 75), above referred to, the admiralty suits were reached for trial. The action *in rem* against the *Barryton* was discontinued under circumstances which will be referred to hereafter, and the libel *in personam* against the Hedger Company was amended. The amended libel as filed eliminated the allegations of negligence and limited the claim to breach of contract. The District Court decided in favor of the Royster Company, the trial judge stating: " The goods involved were not delivered at destination and respondent failed to provide valid insurance. In consequence, there were breaches of the contract in two respects. The fact, however, that the evidence by which to measure damages relates particularly to the insurance phase does not impair the court's jurisdiction." The Circuit Court of Appeals (*Royster Co.* v. *Hedger Co.*, 48 F. [2d] 86) affirmed the decree in favor of the Royster Company, holding, however, that there was no breach of the contract to procure insurance but breach of the contract to carry in accordance with the terms of the insurance policy.

It may be of interest to note that HAND (L.), J., dissented, holding, in effect, that the case was not properly in admiralty, being based on the failure to procure insurance.

Following the affirmance by the Circuit Court of Appeals, the Hedger Company satisfied the decree awarded against it.

Thus far no court passed on the question of the cause of the loss of the cargo. Contemporaneously with the libels of the Royster Company against the Hedger Company, there were pending two suits by the owners of the barges to recover for their loss and damage.

Efforts to link these suits with the Royster Company libel were unsuccessful. On the trial, the tug was held at fault and decrees were awarded in favor of the barge owners.

The Hedger Company satisfied the decree in favor of the Royster Company and assigned to plaintiff all its rights under the policy here in suit, referred to as the " towage " policy. That policy indemnifies the assured, among others, against " loss or damage in respect of any other ship or boat or in respect of any goods, merchandise, freight, or other things or interests whatsoever, on board such other ship or boat, caused proximately or otherwise by the ship insured in so far as the same is not covered by the running down clause hereto attached."

The complaint sets forth six causes of action. In substance, the first cause of action alleges that by reason of alleged faults on the part of the tug *Barryton* and her master a cargo of phosphate rock was damaged to the extent of $21,220.38, for which the Hedger Company was liable to pay the full amount to the Royster Company, and on June 19, 1931, did pay the full amount of such liability. The second cause of action, after repeating essential allegations of the first, alleges that subsequently to the damage the Royster Company filed a libel against the Hedger Company and a further libel against the tug, which alleged said loss and damage were due to the negligence of the *Barryton* and that by virtue of a decree after trial in said suit said Hedger Company was held liable to pay the Royster Company for loss and damage to said rock the sum of $21,220.38, with interest and costs. The third cause of action is substantially the same as the second, with the additional allegation that the trial of said suit resulted in a decree in favor of the Royster Company and a decree on mandate after appeal in the sum of $33,456.93, which the Hedger Company paid. The fourth, fifth and sixth causes of action involve claims for attorney's fees and other expenses and are ancillary to the first three causes of action.

After denials, the answer alleges, as a separate defense, briefly: That the cargo of phosphate rock mentioned in the complaint was the subject of a maritime contract between the Hedger Company and the Royster Company for the carriage thereof from New York to Toledo with complete insurance coverage; that the Hedger Company furnished insurance for the full value of said cargo, the breach of warranty of said insurance, thereby nullifying and voiding the insurance contrary to its aforesaid contract of carriage; that the Royster Company had, at the instance of the Hedger Company, prosecuted an action on the " cargo " policy to the Court of Appeals, in which it was finally adjudicated that prior to the accident the insurance had become voided by breach of the warranty of said

policy; that the Royster Company instead of pursuing an uncertain remedy of a claim of fault for negligence, prosecuted to final judgment its contract and claim and therein recovered judgment for the full amount of the loss and damage to its cargo on the ground of breach of warranty of the " cargo " policy; that thereupon said Hedger Company paid and satisfied said judgment and thereby all possibility of claim by said Royster Company against the tug or its owners was annulled and any possibility of claim by the Hedger Company under the policy of insurance set forth in the complaint was removed. As a defense to the last three causes of action the defendant set up an offer to defend and refusal of such offer.

The defense was held sufficient and the plaintiff was directed to reply. The reply admits the recovery of the judgment on claim for breach of contract of carriage and payment and satisfaction of such judgment, and contains allegations putting in issue the good faith of the defendant in procuring the elimination of the question of negligence in the admiralty litigation in the Federal court. An attack upon this reply on the ground that allegations objected to were sham, frivolous, irrelevant, impertinent and scandalous, inconsistent with the complaint and tending to prejudice, embarrass and delay a fair trial, did not meet with success.

With the pleadings in this state the case was brought on for trial. At the opening the defendant made two motions to dismiss. The first motion was to dismiss on the merits, and as to this the trial court said: " I will reserve decision on that. In fact I cannot grant it, I do not intend to grant it. I intend to take the evidence and let the question turn on the evidence rather than on the pleadings." The second motion was to dismiss the complaint for insufficiency, and as to this the trial court said: " I will deny that at this time." The trial court expressed an intention to let the motions turn on the evidence and not on the pleadings. The defendant also moved to dismiss on the plaintiff's opening, at the close of the plaintiff's case and again at the close of the entire case, and decision was reserved on all of these motions. The case was submitted to the jury on the primary issue of negligence on the part of the Hedger Company and the jury returned a verdict in favor of the plaintiff thereon for $37,563.38. The defendant's motion to set this verdict aside was eventually granted, the trial court holding that the Hedger Company had never been held and never would be held liable for negligence, that what had been paid the Royster Company was damage for breach of contract to carry insurance and that the plaintiff could not recover that in this action.

In the Federal court the Hedger Company was held for failure to make safe delivery of the cargo at Toledo. It is of little importance,

so far as defendant's liability is concerned, that the Royster Company first sought to hold the Hedger Company for loss on the theory of negligence and then, through the subtlety of defendant, relied on its right to hold the Hedger Company as insurer and not for negligence. Failure to maintain insurance for the cargo owner's benefit effected a change in the nature of the Hedger Company's liability from that of carrier to insurer, but it did not create the liability. The sole basis of the claim of the Royster Company against the Hedger Company was the loss of the cargo. Had the cargo not been lost, no claim would have arisen whether the Hedger Company transported the cargo as insurer or merely as carrier.

The agreement between the Hedger Company and the defendant left the Hedger Company free to carry the cargo under any conditions it saw fit, and the defendant could not demand that the Hedger Company agree to be liable to the shipper only in case of negligence. Defendant did not limit its liability to losses recovered against the Hedger Company only as a negligent carrier, nor did it except its obligation from liability for losses recovered against the Hedger Company as an insuring carrier. Under the broad phrase used in the policy it agreed to indemnify the Hedger Company in every case in which it was required to pay a loss due to the operation of the insured tug.

While it is not contended by the defendant that the admiralty decree is *res adjudicata* as to its liability under the policy here sued on, it is urged that the plaintiff's reply admits that that decree was entered in a suit sounding not in tort but based on the breach of contract to maintain insurance which had been broken before the *Barryton* took the barges out of Buffalo and, since the owners of the cargo have been compensated for the full amount of their loss in that suit, it follows that the tug and its owners were not held for negligence and that they never can be; that the plaintiff is bound by that decree, having pleaded and proved it and necessarily relying upon it to prove a payment, and that the plaintiff is bound as to the ground of the liability adjudicated in that action. Of course, all this relates to the character or capacity in which Hedger Company was held liable. In paying the Royster Company, Hedger Company was discharging its liability for the thing for which it was held answerable, to wit, the loss of the cargo. It is that, *i. e.*, the loss of the cargo, for which it paid; and by so paying the Hedger Company discharged its entire liability and every element thereof, contract, negligence or otherwise.

To enable the plaintiff to recover in this action, she had to prove: (1) Loss of or damage to cargo of another vessel, (2) caused by the vessel insured (the *Barryton*), (3) liability of the assured to

pay for such loss or damage, (4) payment for such loss or damage by the assured.

Nothing in the policy requires that payment be made only after liability has been adjudicated. If the Hedger Company was in fact liable, it did not have to wait a judgment.

" The recovery of the judgment against the insured by the injured party is not the injury against which the insurer insures him, but it is the liability for the consequences of the accident against which he is insured, and of which liability the judgment is a mere test or mode of proof." (*Ross* v. *American Employers' Liability Ins. Co.*, 56 N. J. Eq. 41; 38 A. 22.)

The admiralty decree establishes elements one and three above enumerated. The complaint herein alleges and the plaintiff proved the fourth. There remains only the second — the cause of the loss. What caused the loss? Certainly not the failure to carry insurance. Was the loss caused proximately or otherwise by the *Barryton?* That question could have been answered in the Federal court, also, but for the intermeddling of the defendant in litigation in which it should have remained neutral.

The discontinuance of the libel *in rem* against the tug *Barryton* was brought about under the following circumstances: The insurance company agreed to pay the Royster Company the sum of $25,000 upon condition that the libel *in rem* against the *Barryton* be discontinued and the proceedings against the Hedger Company for breach of contract be continued, with an option to the insurance company on any judgment that might be recovered. That agreement was carried out, $25,000 was paid to the Royster Company and upon satisfaction of the decree the latter company paid over to the insurance company an amount somewhat more than $25,000. Obviously this arrangement had for its purpose the avoidance by the insurance company of its liability over to this plaintiff under the policy in suit. As a result of the amendment of the complaint in the Royster Company action the allegations of negligence were eliminated and the recovery was one for breach of contract, which the defendant now asserts this policy does not cover. The good faith of the defendant in thus obtaining a result favorable to itself in litigation to which it was not a party is open to question. The net result of this was that the defendant became its assured's adversary. This court will not lend its aid to lock the door which defendant no doubt hoped it had effectively closed on the issue of the Hedger Company's negligence.

The verdict of the jury shows that the loss of the cargo was caused by the *Barryton*. The evidence supports that verdict.

The plaintiff's proof showed her to be entitled to collect under the broad provisions of the policy sued on.

The judgment and order setting aside the verdict should be reversed, with costs, and the verdict reinstated.

The order entered November 24, 1931, in so far as it denies plaintiff's motion to strike out paragraphs XXV and XXVIII of the answer, and the order entered November 6, 1931, requiring plaintiff to reply to the allegations of paragraph XXVIII of the answer are affirmed.

McAvoy, Untermyer and Dore, JJ., concur; O'Malley, J., dissents and votes to affirm.

Judgment and order setting aside the verdict reversed and the verdict reinstated. Order entered November 24, 1931, in so far as it denies plaintiff's motion to strike out paragraphs XXV and XXVIII of the answer, and the order entered November 6, 1931, requiring plaintiff to reply to the allegations of paragraph XXVIII of the answer, unanimously affirmed.